IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES R. HARTSHORN,

    Plaintiff,

                                        Civil Action 2:19-cv-37
                                        Judge George C. Smith
    v.                                   Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, James R. Hartshorn ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 8). For the following reasons, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and the ALJ for further consideration consistent with this Report and Recommendation.

**I.  BACKGROUND**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on September 18, 2015, alleging disability beginning December 11, 2014. (R. at

1

R. at 201–12.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 126–32, 135–46.) Upon request, a hearing was held on September 20, 2017, in which Plaintiff, represented by counsel, appeared and testified. (R. at 35–65.) A vocational expert ("VE"), Connie O'Brien, also appeared and testified at the hearing. (*Id*.) On January 31, 2018, Administrative Law Judge Timothy Gates ("the ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 14–29.) On November 5, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–8.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II.  RELEVANT HEARING TESTIMONY

A.  Plaintiff's Testimony

Plaintiff testified at the September 2017 administrative hearing that his most recent past work was as a dump truck driver for CNC Farms. (R. at 40.) As part of this work, he did some manual labor, but typically he was driving a truck. (R. at 41.) Prior to this job, Plaintiff was employed by Perry Township for at least some time in 2002 and 2005. (R. at 42–43.) At this job, he was on the road crew and drove a dump truck. (R. at 43.) At this job, he would occasionally lift between 50 and 100 pounds. (R. at 45.)

Plaintiff explained that he stopped working at CNC Farms in November 2014, before his back surgery in December 2014. (R. at 46.) He testified that he has not been able to return to work following the surgery because he has had "stabbing burning" in his lower back that travels down his right leg, causing his leg to go numb, and making him unable to stand. (*Id.*) Plaintiff explained that his doctor had offered him a spinal cord stimulator, but his doctor had advised him that it would only be temporary relief. (R. at 47.) Plaintiff declined, explaining that he was "not really into having the device in [his] back that [he] can't remove." (*Id*.)

2

Plaintiff stated that he was treated by Dr. Kevin Frank for his back pain and depression. (*Id.*) He testified that he had been taking medication for depression for over a year. (*Id.*) Dr. Frank also treats Plaintiff's high blood pressure and right ankle pain. (*Id.*) Plaintiff described that in April 2017 he was walking in his home and his leg went numb, causing him to fall and twist his right ankle. (R. at 48.) At the time of the hearing, he said it was still hurting. (*Id.*)

The ALJ asked Plaintiff why he is unable to engage in his past work of driving a dump truck. (R. at 48.) Plaintiff responded that these trucks bounce and are rough to drive. (*Id.*) He said he would not be able to get into the truck due to his sharp stabbing pain in his lower back. (*Id.*) He also mentioned that, since his right leg occasionally gets numb, he would be unable to go out and shovel, which was part of his past work. (*Id.*) Plaintiff said he would also not be able to do a job where he was seated most of the day because, when he sits, the pain in his lower back becomes severe. (R. at 54.) When that happens, he needs to stand up for twenty to thirty minutes to alleviate the pain. (*Id.*)

Plaintiff had a cane with him at the hearing that he said he uses all the time. (R. at 49.) Without his cane, Plaintiff said he is only able to walk if he uses his hand as a crutch on his leg. (*Id.*) Doing so, he is able to walk for about five minutes before needing to sit down due to the stabbing pain. (*Id.*) Plaintiff testified that he had trouble lifting two-pound weights during his functional examination in August 2017. (R. at 50.) He said that lifting things more than a couple pounds makes his back hurt worse and causes his leg to go numb. (*Id.*)

Plaintiff reported that his wife and children help him with daily living activities. (R. at 50–51.) He testified that he does not do any yard work, cooking, cleaning, or laundry, and that he only drives a short distance about once per week. (R. at 51.)

3

B. Vocational Expert's Testimony

Connie O'Brien testified as the VE at the administrative hearing. (R. at 35–65.) Based on Plaintiff's age, education, and work experience and the residual functional capacity ultimately determined by the ALJ, the VE testified that a similarly situated hypothetical individual could perform the following jobs that exist in significant numbers in the national economy: patcher, document specialist, and bench hand. (R. at 62.)

### III. RELEVANT RECORD EVIDENCE

On August 11, 2017, Plaintiff was examined by Carolyn Gilliam, OTR/L, for a functional capacity evaluation upon referral by Plaintiff's treating physician, Dr. Kevin Frank. (R. at 609–619.) Dr. Frank signed the evaluation, noting that he agreed with its findings and further noting that all of Plaintiff's disabilities have been present or have worsened since his failed surgery in December 2014. (R. at 614.) The evaluation noted that Plaintiff had minimal to moderate limitations on sitting, and moderate to significant limitations on standing and walking. (R. at 612.) Ms. Gilliam found that Plaintiff had poor standing balance and that he was only able to pick something up from 14 inches from floor level. (R. at 613.) She further noted that Plaintiff was limited in carrying only an extremely light item with his left hand while using his straight cane. (*Id*.) Additionally, the report stated that Plaintiff could only reach, handle, finger, and feel for short periods of time of two minutes or less, and that Plaintiff complained of constant low back pain. (*Id*.) Ms. Gilliam noted that Plaintiff had a slow gait, was forward flexed at the trunk, and had limited ground clearance even using a cane. (*Id*.)

## IV. ADMINISTRATIVE DECISION

On January 31, 2018, the ALJ issued his decision. (R. at 14–29.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 30, 2014, his alleged onset date. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, with residual scarring after laminectomy; somatic disorder; dysthymic disorder; and generalized anxiety disorder. (R. at 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant has the ability to lift and carry up to 20 pounds occasionally, 10 pounds frequently; can sit for up to 6 hours in an 8-hour workday, and can stand and walk for 2 hours in an 8-hour

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

workday.  The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffold, and can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant can have no exposure to workplace hazards.  The claimant can have no strict production requirements, in a static work environment, with only occasional interactions with supervisors, coworkers, and the general public.

(R. at 20.)

Relying on testimony from the VE, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy, including patcher, document specialist, and bench hand.  (R. at 28.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (*Id.*)

## V.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth three assignments of error. First, he asserts that the ALJ failed to provide good reasons for discrediting the opinion of his treating physician, Dr. Kevin Frank. (ECF No. 9 at 6–11.) Next, Plaintiff contends that the ALJ's decision should be reversed because the ALJ's mental RFC is not supported by substantial evidence. (*Id.* at 11–14.) The third assignment of error is that the ALJ failed to properly determine whether or not Plaintiff medically required the use of an assistive device. The Undersigned finds Plaintiff's first contention of error to be well-taken.[2]

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

---

[2] This finding obviates the need for in-depth analysis of Plaintiff's remaining assignment of error. Thus, the Undersigned need not, and does not, resolve the alternative basis Plaintiff asserts supports reversal and remand. Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

7

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x

8

543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Frank is a treating physician and that his opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the

Plaintiff's] case record . . . ." 20 C.F.R. § 404.1527(d)(2). After setting forth Plaintiff's RFC, the ALJ discussed the RFC evaluation conducted by Ms. Gilliam and adopted by Dr. Frank:

> The undersigned has also considered the evaluation performed by Carolyn Gilliam, OTR/L., which indicated the claimant could perform less than the sedentary of exertional functioning, standing and walking 12 minutes at one time for a total of 1 hour and 18 minutes, sitting for 23 minutes at one up for a total of l hour and 55 minutes, lifting and carrying 2 pounds seldom to occasionally, pushing 38 pounds, seldom to occasional stooping and reaching, with occasional grip, and seldom-occasional horizontal reaching.

(R. at 26, citing 16F at 7.) The ALJ went on to analyze Ms. Gilliam's evaluation findings as follows:

> This report appears to be annotated by the claimant's primary care provider, indicating [he] agreed to the above, and that "all disabilities present/worse since failed surgery." [R. at 614.] The undersigned assigns these limitations and opinions little weight. First, as identified above, there was some question related to the claimant's effort and inconsistent reliability of reports of pain and disability noted during the claimant's evaluation. Secondly, the limitations assessed, significantly deviate from the claimant's physical abilities noted during his physical examinations with treating sources. Furthermore, the claimant's somatoform diagnosis indicates that the claimant tends to focus on his impairment, which may affect his ability/motivation to perform tasks.

(R. at 26.) The ALJ devoted just one sentence to Dr. Frank's opinions as outlined in the examination report and his annotations thereto:

> Finally, to the extent that Dr. Frank, the claimant's primary care provider, cosigned and annotated the document [referring to the evaluation performed by Gilliam], little weight is given as the assessed restrictions are inconsistent with Dr. Frank[']s own physical examinations of record, with no commentary provided to the questions of effort and inconsistent reliability of pain and disability.

(R. at 26.)

The Undersigned finds that the ALJ did not provide good reasons for rejecting Dr. Frank's opinion regarding Plaintiff's functional limitations and aptitude to perform certain kinds of work. The ALJ's only reasoning was that Dr. Frank's findings were "inconsistent with [his] own physical examinations of record" and that he provided "no commentary . . . to the questions of effort and

10

inconsistent reliability of pain and disability." (R. at 26.) This does not meet the standard of providing "good reasons" for discounting a treating physician opinion:

> Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* [*Blakley*, 581 F.3d at 408.] Put simply, it is not enough to dismiss a treating physician's opinion as "incompatible" with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.

*Friend*, 375 F. App'x at 552. In *Friend*, the plaintiff's treating physician completed a physical functional capacity assessment form indicating that the plaintiff could only stand or walk one hour per eight-hour day. *Id.* at 545. The ALJ rejected his opinion in favor of the opinion of a reviewing physician, reasoning that "'the testimony of [the treating physician] which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective clinical findings,' and 'there is no basis for [the treating physician's] conclusion that the claimant can stand/walk for only one hour in a day.'" *Id.* at 548. The Sixth Circuit held that the ALJ's explanation was insufficient to satisfy the reasons-giving requirement. *Id.* at 551. In particular, the Court reasoned that the ALJ failed to identify, let alone discuss, the particular "objective clinical findings" he found inconsistent with the treating-source opinion. *Id.* The Court found that, even if it is inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. § § 404.1527 and 416.927. *Id.*

Here, the ALJ's opinion is conclusory and does not identify which portions of Dr. Frank's treatment notes the ALJ found to be inconsistent with his opinions. Nor did he explain his conclusion that Dr. Frank's opinions should be discounted because his annotations do not include a discussion of Plaintiff's effort during the examination. As Plaintiff notes, this

evaluation conducted by Ms. Gilliam which Dr. Frank approved and annotated is the only report based on objective clinical findings in the record. (ECF No. 9 at 9.) The ALJ did not explicitly apply the factors provided in 20 C.F.R. § § 404.1527 and 416.927 in his decision to assign little weight to Dr. Frank's opinions and his reasoning is not "sufficiently specific to make clear to any subsequent reviewers . . . the reasons for that weight." *Friend*, 375 F. App'x at 550.

In *Wilson*, the Sixth Circuit considered three possible scenarios that could lead the Court to a finding of harmless error even when the ALJ failed to articulate good reasons for not assigning controlling weight to a treating physician's opinion. 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it . . . ." *Id*. Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id*. Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id*.

Here, the ALJ's violation of the good reason rule was not harmless error. First, Dr. Frank's opinion is neither "patently deficient" nor consistent with the ALJ's decision, and the Commissioner makes no attempt to argue that they are. (*See* ECF No. 15 at 3–9.) The last possible route to a finding of harmless error, that the goal of § 1527(d)(2) has been met despite noncompliance with its terms, requires more analysis here.

In *Hall v. Commissioner of Social Security*, the Sixth Circuit elaborated on how an ALJ might meet the goal of § 1527(d)(2) without complying with the procedural requirements, explaining as follows:

> As applied to this case, the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, § 404.1527(d)(3), or the "consistency" of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, see § 404.1527(d)(2). However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, *see Wilson*, 378 F.3d at 544–45 (discussing purposes of treating-source regulations), not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

*Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (footnotes omitted).

Thus, "the equivalent of good reasons for not adopting a treating source's opinion could perhaps be found in an ALJ's analysis of the ailment addressed by the opinion" or in the ALJ's analysis of the treating physician's other opinions. *Id.* at 464–65. Indeed, "[a]n ALJ may accomplish the goals of th[e] procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (emphasis in original) (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006); *Hall*, 148 F. App'x at 464–65). In determining whether the ALJ indirectly attacked the treating physician's opinion, "courts look to the ALJ's decision itself, and not other evidence in the record." *Coldiron*, 391 F. App'x at 440.

Here, the ALJ does not provide analysis of Dr. Frank's findings beyond the conclusory dismissal outlined above. Moreover, his analysis of Plaintiff's impairments do not adequately

13

attack Dr. Frank's opinions regarding Plaintiff's functional limitations. In the ALJ's discussion of Plaintiff's impairments generally, he cites to Dr. Frank's treatment notes several times. For example, the ALJ cites to Dr. Frank's treatment notes to explain that in early 2016, Plaintiff repeatedly reported pain "with intermittent occasional positive findings for lumbar spinal tenderness on exam." (R. at 23, citing R. at 480–87, 490–87.) The ALJ cites to Dr. Frank's treatment records to show that Plaintiff continued to report symptoms of pain through 2016. (R. at 23, citing R. at 507–22.) Dr. Frank's treatment notes also show that Plaintiff repeatedly reported depression, which the ALJ noted in his discussion. (R. at 24, citing R. at 474.) In one citation to Dr. Frank's findings, the ALJ noted that Plaintiff appeared with a normal gait and coordination and that the treatment notes do not mention use of a cane. (R. at 23, citing R. at 467, 474.) These references are insufficient to "indirectly attack[] the supportability of [Dr. Frank's] opinion or its consistency with the other evidence in the record" such that the ALJ's lack of good reasons should be considered harmless error. *Coldiron*, 391 F. App'x at 440. Specifically, these isolated citations to Dr. Frank's treatment notes alone do not provide enough context for why the ALJ concluded that Dr. Frank's opinions regarding Plaintiff's functional limitations were inconsistent with his treatment notes.

The Undersigned also finds that the Court cannot engage in a meaningful review of the ALJ's rejection of Dr. Williams' opinion because he did not explicitly discuss how each of the six factors in 20 C.F.R. § 404.1527(d)(2)-(6) either supported or undercut rejection of the opinion. *See Nelson*, 195 F. App'x at 472 (noting that it is "rare" for the ALJ's analysis to meet "the goal of the rule even if not meeting its letter").

Because the Undersigned cannot otherwise trace the ALJ's path of reasoning or discern what evidence the ALJ relied upon to reject the opinions of Dr. Frank, remand is required. *See*

*Rogers*, 486 F.3d at 243 (explaining that one of the purposes of the good reason requirement is to ensure meaningful appellate review of the ALJ's application of the treating physician rule); *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (finding that "the ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'" (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)); *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545) ("[W]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

Finally, the undersigned declines the Commissioner's invitation to weigh the evidence to conclude that substantial evidence does not support Dr. Frank's opinion. As the Sixth Circuit has recognized in similar circumstances:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to noncompliance with [20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Wilson*, 378 F.3d at 546.

For these reasons, it is **RECOMMENDED** that Plaintiff's first contention of error be **SUSTAINED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that the decision of the Commissioner be

15

**REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: February 13, 2020**              /s/ *Elizabeth A. Preston Deavers*
                                                                  **ELIZABETH A. PRESTON DEAVERS**
                                                                  **CHIEF UNITED STATES MAGISTRATE JUDGE**